1

2

3                          UNITED STATES DISTRICT COURT

4                         NORTHERN DISTRICT OF CALIFORNIA

5

6   RICHARD CHEN, et al.,

7              Plaintiffs,                    No. C 13-0685 PJH

8        v.                                   **ORDER GRANTING MOTION TO
                                              DISMISS IN PART AND DENYING**
9   ALLSTATE INSURANCE COMPANY,               **IT IN PART**

10             Defendant.
   _____/
11

12       The motion of defendant Allstate Insurance Company ("Allstate") for an order

13  dismissing the above-entitled action for lack of subject matter jurisdiction and failure to

14  state a claim came on for hearing before this court on June 5, 2013.  Plaintiff appeared by

15  his counsel Matthew Loker, and Allstate appeared by its counsel Mark Levin.  Having read

16  the parties' papers and carefully considered their arguments and the relevant legal

17  authority, the court hereby GRANTS the motion in part and DENIES it in part as follows.

18                                  **BACKGROUND**

19       This is a case filed as a proposed class action, asserting violations of the Telephone

20  Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").  The complaint alleges that

21  defendant Allstate engaged in unlawful activities by contacting plaintiff and the members of

22  the proposed class on their cell phones without their consent.

23       Plaintiff Richard Chen ("Chen") filed the original complaint on February 14, 2013, as

24  a proposed class action seeking statutory damages ($500 per unlawful call, or up to $1,500

25  per unlawful call for knowing/willful violations) and injunctive relief against Allstate.  Chen

26  alleged that in January 2013, Allstate called him on his cell phone in an attempt to solicit his

27  purchase of an insurance policy.  He asserted that Allstate placed "no less than eight (8)

28  calls" to his cell phone through the use of an "automatic telephone dialing system;" that he

United States District Court
For the Northern District of California

1   had never been a customer of Allstate; and that he had never given Allstate his prior

2   consent to call his cell phone using an automatic telephone dialing system.

3          On March 3, 2013, Chen filed a first amended complaint ("FAC"), adding an

4   additional plaintiff – Florencio Pacleb ("Pacleb").  The FAC alleges that Allstate called

5   Pacleb "no less than five (5)" times on his cell phone in February and March 2013, using an

6   automatic telephone dialing system; that he had never been a customer of Allstate, and

7   had not given Allstate prior consent to make the calls; and that the calls were not for

8   emergency purposes.  The FAC also alleges that Pacleb was never able to talk to a "live

9   human representative" from Allstate, and that each time he answered the call he was

10  greeted with "dead air" followed by a recorded message asking for an individual named

11  "Frank Arnold."

12         The FAC asserts two causes of action – (1) negligent violations of the TCPA ($500

13  per unlawful call); and (2) knowing and/or willful violations of the TCPA ($1,500 per

14  unlawful call).

15         On April 10, 2013, Allstate made an offer of judgment to Chen and Pacleb pursuant

16  to Federal Rule of Civil Procedure 68.  Allstate offered Chen $15,000, and Pacleb $10,000,

17  plus "reasonable attorney's fees and costs that have been accrued to date."  Allstate also

18  offered to stop sending plaintiffs non-emergency telephone calls and short message

19  service messages, and to have a reasonable amount of attorney's fees and costs

20  determined by the court if the parties could not agree on the amount.

21         On April 24, 2013, counsel for Allstate sent plaintiffs' counsel a letter stating,

22  "Allstate hereby extends its April 10, 2013 offer of judgment until such time as it is accepted

23  by plaintiffs or Allstate withdraws the offer in writing."  On April 25, 2013, Allstate filed the

24  present motion to dismiss.

25         On May 8, 2013, Chen filed a notice of acceptance of Allstate's offer of judgment,

26  and was effectively dismissed from the case (though no request for judgment has yet been

27  filed by Allstate).  To date, Pacleb has not accepted Allstate's offer.  Allstate asserts that

28  the offer to Pacleb is still "open."

1 Allstate now seeks an order dismissing the FAC pursuant to Federal Rule of Civil

2 Procedure 12(b)(1) for lack of subject matter jurisdiction; and also argues that the court

3 should "dismiss or strike" plaintiff's demand for treble damages (available under the TCPA

4 for willing or knowing violation of the statute).

5 **DISCUSSION**

6 A. Telephone Consumer Protection Act

7 In relevant part, the TCPA provides as follows with regard to "[r]estrictions on the

8 use of automated telephone equipment" –

9 (1) Prohibitions

10 It shall be unlawful for any person within the United States, or
11 any person outside the United States if the recipient is within the
United States –

12 (A) to make any call (other than a call made for emergency
purposes or made with the prior express consent of the called
13 party) using any automatic telephone dialing system or an
artificial or prerecorded voice –

14 . . .

15 (iii) to any telephone number assigned to a paging service,
16 cellular telephone service, specialized mobile radio service, or
other radio common carrier service, or any service for which the
17 called party is charged for the call;

18 (B) to initiate any telephone call to any residential telephone line
using an artificial or prerecorded voice to deliver a message
19 without the prior express consent of the called party, unless the
call is initiated for emergency purposes or is exempted by rule
20 or order by the Commission under paragraph (2)(B);

21 . . .

22 (D) to use an automatic telephone dialing system in such a way
that two or more telephone lines of a multi-line business are
23 engaged simultaneously.
. . .

24
(3) Private right of action
25
A person or entity may, if otherwise permitted by the laws or rules of court of
26 a State, bring in an appropriate court of that State –

27 (A) an action based on a violation of this subsection or the
regulations prescribed under this subsection to enjoin such
28 violation,

3

United States District Court

For the Northern District of California

1

2

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

3

(C) both such actions.

4

5

6

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

7    47 U.S.C. § 227(b)(1), (3).

8    B.    Legal Standards

9         1.    Motions to Dismiss for Lack of Subject Matter Jurisdiction

10        Federal courts are courts of limited jurisdiction, possessing only that power

11   authorized by Article III of the United States Constitution and statutes enacted by Congress

12   pursuant thereto.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).

13   Thus, federal courts have no power to consider claims for which they lack subject-matter

14   jurisdiction.  See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412,

15   1415 (9th Cir. 1992).

16        Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of a

17   claim or action for lack of subject matter jurisdiction.   Although the defendant is the moving

18   party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking

19   the court's jurisdiction.  As a result, the plaintiff bears the burden of proving that the case is

20   properly in federal court.  McCauley v. Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001)

21   (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

22        Nevertheless, the plaintiff must do more than merely allege that a violation of federal

23   law has occurred; the plaintiff must have standing to invoke the power of the federal court.

24   Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,

25   454 U.S. 464, 471-72 (1982).  Standing is a jurisdictional limitation.  It is "an essential and

26   unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders

27   of Wildlife, 504 U.S. 555, 560 (1992).

28        To establish a "case or controversy" within the meaning of Article III, a plaintiff must,

1   at an "irreducible minimum," show an "injury in fact" which is concrete and not conjectural,

2   a causal causation between the injury and defendant's conduct or omissions, and a

3   likelihood that the injury will be redressed by a favorable decision. Id. at 560-61; see also

4   Allen v. Wright, 468 U.S. 737, 751 (1984).  Standing is not subject to waiver, and must be

5   considered by the court even if the parties fail to raise it.  See United States v. Hays, 515

6   U.S. 737, 742 (1995).  The burden is on the party who seeks the exercise of jurisdiction in

7   his or her favor to "clearly . . . allege facts demonstrating that he is a proper party to invoke

8   judicial resolution of the dispute."  Id. at 743.

9        Also embedded in Article III's case-or-controversy requirement is the doctrine of

10  mootness, which requires that an actual, ongoing controversy exist at all stages of federal

11  court proceedings.  See Burke v. Barnes, 479 U.S. 361, 363 (1987).  A case becomes

12  moot when the issues presented are no longer "live" or the parties lack a legally cognizable

13  interest in the outcome of the litigation.  Powell v. McCormack, 395 U.S. 486, 496 (1969).

14  That is, if events subsequent to the filing of the case can solve the parties' dispute, the

15  court must dismiss the case as moot, because the court does not have constitutional

16  authority to decide moot cases.  Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086-87 (9th

17  Cir. 2011).

18       2.        Offers of Judgment under Federal Rule of Civil Procedure 68

19       At any time up to 14 days before the date set for trial, a defendant may serve a

20  plaintiff with an offer to allow judgment to be taken against the defendant for a specified

21  amount of money or property with costs then accrued.  If the plaintiff accepts, and the offer

22  and acceptance are filed with the court, the clerk must enter judgment accordingly.  Fed. R.

23  Civ. P. 68(a).  If the offer is not accepted within 14 days after service, it is deemed

24  withdrawn, "but it does not preclude a later offer."  Fed. R. Civ. P. 68(b).  If the judgment

25  recovered by the plaintiff at trial is "not more favorable" than the defendant's offer, the

26  plaintiff must pay the defendant's costs incurred after the offer was made.  Fed. R. Civ. P.

27  68(d); see also Marek v. Chesney, 473 U.S. 1, 5 (1985).

28       If a defendant offers judgment in complete satisfaction of a plaintiff's claims, the

United States District Court

For the Northern District of California

5

United States District Court

For the Northern District of California

1    plaintiff's claims generally are rendered moot because the plaintiff lacks any remaining

2    interest in the outcome of the case.  See Schwarzer, Tashima and Wagstaffe, Federal Civil

3    Procedure Before Trial (2013 ed.) § 15:156.5.  In cases filed as class actions, however, the

4    rule has long been that once a class is certified, the claims of the unnamed class members

5    are not mooted by the named plaintiff's acceptance of an offer of judgment.  See Wright &

6    Miller, 13C Federal Practice and Procedure, Jurisdiction (3d ed. 2013) § 3533.9.1.  The

7    question whether that same rule applies where a class has not yet been certified remains

8    somewhat unsettled.  See id.; see also Schwarzer, et al., § 15:156.5.

9        In Pitts, the plaintiff filed suit in the District of Nevada in April 2009, alleging failure to

10    pay overtime and minimum wages, and asserting a collective action under the federal Fair

11    Labor Standards Act, a class action for violation of Nevada labor laws, and a class action

12    for breach of contract.  The defendant served the plaintiff with a Rule 68 offer of judgment,

13    for an amount well over the amount the plaintiff was seeking on his own behalf.  The

14    plaintiff refused the offer, and the defendant filed a motion to dismiss for lack of subject

15    matter jurisdiction, arguing that the offer of judgment had rendered the entire action moot.

16        The district court ruled that a Rule 68 offer of judgment does not moot a putative

17    class action so long as the class representative can file a timely motion for class

18    certification; but nevertheless found that the defendant's offer did moot the action because

19    the plaintiff had failed to seek class certification before the initial deadline for completion of

20    discovery (which had subsequently been extended) – and had thus failed to act in a "timely"

21    manner.  The court dismissed both the FLSA cause of action and the state law labor code

22    cause of action on that basis.

23        The court also ruled that a Rule 23 class action alleging violations of state law is

24    incompatible with an FLSA collective action, and that where both are brought together, only

25    the FLSA action may proceed – notwithstanding that in the case before the court, the

26    plaintiff had sought to dismiss the FLSA claim and proceed under only the state law class

27    action.

28        On appeal, the Ninth Circuit considered a number of issues, including whether a

6

United States District Court

For the Northern District of California

1    rejected offer of judgment for the full amount of a putative class representative's individual

2    claim moots a class action complaint where the offer precedes the filing of a motion for

3    class certification.  The court held that it does not in all cases.  Pitts, 653 F.3d at 1090.

4         Relying on United States Parole Comm'n v. Geraghty, 445 U.S. 388 (1980); Deposit

5    Guaranty Nat. Bank v. Roper, 445 U.S. 326 (1980); and Sosna v. Iowa, 419 U.S. 393

6    (1975), the court as an initial matter noted that if the district court has certified a class,

7    mooting the putative class representative's claim will not moot the class action, because

8    upon certification the class acquires a legal status apart from the interest asserted by the

9    class representative.  Pitts, 653 at 1090.  Further, if the district court has denied class

10   certification, mooting the class representative's claim will not necessarily moot the class

11   action, because the putative class representative retains an interest in obtaining a final

12   decision on the class certification.  Id.

13        Finally, the court held that "even if the district court has not yet addressed the class

14   certification issue, mooting the putative class representative's claims will not necessarily

15   moot the class action."  Id.  The court advised that the mootness doctrine be applied

16   "flexibly" – "particularly where the issues remain alive" even if the named plaintiff's stake in

17   the outcome has become moot.  Id. at 1087.  The court noted that some claims are so

18   "inherently transitory" that the court would not have enough time to rule on a motion for

19   class certification before the proposed representative's individual interest will expire.  Id. at

20   1090.

21        An "inherently transitory" claim is one that will certainly repeat as to the class, either

22   because the individual could suffer repeated harm, or because it is certain that others

23   similarly situated will have the same complaint.  Id.  In such cases, the court opined, the

24   named plaintiff's claim is "capable of repetition, yet evading review," and the "relation back"

25   doctrine would apply to preserve the merits of the case for judicial resolution.  Id. (citations

26   and quotations omitted).

27        The court conceded that the plaintiff's claim in the case before it was not inherently

28   transitory, but asserted that where a defendant is seeking to "buy off" the individual claims

7

United States District Court

For the Northern District of California

1  of the named plaintiffs, the analogous claims of the class "become no less transitory than

2  inherently transitory claims." Id. at 1091.  The court concluded that application of the

3  "relation back" doctrine in the case before it would "avoid the spectre of plaintiffs filing

4  lawsuit after lawsuit, only to see their claims mooted before they can be resolved." Id. at

5  1090.

6       Thus, the court determined that the defendant's unaccepted offer of judgment did

7  not moot the named plaintiff's case because his class action claim was "transitory" in nature

8  because it was subject to the potential "buy-off," and might otherwise evade review – and

9  that if the district court were to certify a class, the certification would relate back to the filing

10  of the complaint. Id. at 1091-92.  This decision was in accord with decisions reached by

11  the Tenth, Fifth, and Third Circuits. See Damasco v. Clearwire Corp., 662 F.3d 891, 895-

12  96 (7th Cir. 2011).

13       In the Seventh Circuit, by contrast, the court in Damasco held that the action (also

14  brought under the TCPA) was mooted by the defendant's offer of the named plaintiff's full

15  request for relief that preceded a motion for class certification. Id., 662 F.3d at 895-96.[1]

16  (The offer was an offer of settlement, not a Rule 68 offer of judgment, but the court

17  concluded that the difference between the two was not significant.)  The Damasco court

18  was critical of the approach taken by the Ninth, Tenth, Fifth, and Third Circuits, which was

19  that absent undue delay, a plaintiff may move to certify a class and avoid mootness even

20  after being offered complete relief. See id. (citing, e.g., Pitts, 653 F.3d at 1091-92).

21       Here, Allstate argues that Pitts is no longer good law in light of the Supreme Court's

22  recent decision in Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523 (2013), but the

23  court does not agree. Genesis was an FLSA case, in which the district court dismissed the

24

25       [1] The Seventh Circuit also held, however, that class action plaintiffs can move to certify
26  the class at the same time they file their complaint, and that the pendency of that class cert
    motion will protect a putative class from attempts to "buy off" the named plaintiffs.  The court
27  also asserted that even if the plaintiffs do not have sufficient facts to move for class
    certification, they can "ask the district court to delay its ruling to provide time for additional
28  discovery or investigation." Id., 662 F.3d at 896-97.  The court characterized this as a "simple
    solution to the buy-off problem."

United States District Court
For the Northern District of California

1   complaint for lack of subject matter jurisdiction after the employer extended an offer of

2   judgment in full satisfaction of the plaintiff-employee's claimed damages, fees, and costs.

3   The Third Circuit reversed, finding that while the individual claim was moot, the collective

4   action was not, and that allowing defendants to "pick off" named plaintiffs before

5   certification with calculated Rule 68 offers would frustrate the goals of collective actions.

6   The court remanded the case to the district court to allow the plaintiff to seek "conditional

7   certification" which, if successful, would relate back to the date the complaint was filed.

8   See Genesis, 133 S.Ct. at 1524-25.

9       The Supreme Court granted cert, and reversed the order remanding the case so that

10  plaintiff could move for a conditional certification.  The court found that the question

11  whether the plaintiff's failure to respond to the offer of judgment had the effect of mooting

12  her claims was not before it, because both the district court and the Third Circuit had ruled

13  that the plaintiff's individual claim was moot because of the unaccepted offer of judgment,

14  and because plaintiff herself had "conceded" (while the case was pending before the district

15  court) that an offer of complete relief will generally moot the plaintiff's claim.

16      Instead, the Court turned to the question whether the action remained justiciable

17  based on the collective-action allegations in the complaint.  The Court held that the

18  individual plaintiff's suit became moot when her FLSA claim became moot, because from

19  that point on she lacked any personal interest in representing others in the FLSA collective

20  action.  Id. at 1529.  The Court also found that the cases on which the plaintiff relied –

21  which all had arisen in the context of Rule 23 class actions – were inapposite, both

22  because Rule 23 actions are fundamentally different from FLSA collective actions, and

23  because the cases on their own terms were inapplicable to the facts of the case.  These

24  cases include the three cases cited by the Ninth Circuit in Pitts – Geraghty, Roper, and

25  Sosna.  See Genesis, 133 S.Ct. at 1530-32.

26      The Court cited these cases for the proposition that while a live controversy might

27  continue to exist after class certification has been denied, because a corrected ruling on

28  appeal would relate back to the time of the erroneous denial of the class cert motion, the

United States District Court

For the Northern District of California

1    situation in the <u>Genesis</u> case was that the claim became moot before the plaintiff had

2    moved for certification, and also because under the FLSA, a "conditional certification" does

3    not confer independent legal status (as a Rule 23 certification does).  <u>See</u> <u>Genesis</u>, 133

4    S.Ct. at 1530.

5         The court also addressed the argument that an "inherently transitory" class action

6    claim is not necessarily moot upon the termination of the named plaintiff's claim.  The court

7    indicated that this might be true if the plaintiff was challenging the constitutionality of

8    temporary pretrial detentions, but noted that unlike claims for injunctive relief challenging

9    ongoing conduct, claims for damages cannot evade review, and remain live until settled,

10   judicially resolved, or barred by a statute of limitations.  Moreover, the Court noted, while

11   settlement of the named plaintiff's claim prior to certification may have the effect of

12   foreclosing unjoined plaintiffs from having their rights vindicated in the original plaintiff's

13   suit, nothing precludes them from filing their own suits.  <u>Id.</u> at 1530-31.

14        Finally, the Court addressed the argument that the purposes served by the FLSA's

15   collective action provisions would be frustrated by defendants' use of Rule 68 to "pick off"

16   named plaintiffs before the collective action process has run its course.  The Court noted

17   that in <u>Roper</u>, the district court had denied the motion for class cert, and had found that the

18   named plaintiffs retained an ongoing personal economic interest in the case – to shift the

19   attorney's fees and expenses to successful class litigants.  The Court characterized the

20   language about "pick[ing] off" named plaintiffs as "dicta," and noted that the essence of the

21   ruling was that the plaintiffs retained a continuing personal economic stake in the litigation

22   even after the defendants' offer of judgment (but also noted that later cases have held that

23   an interest in attorney's fees is not sufficient to create an Article III case or controversy

24   where none exists on the merits of the underlying claim).  <u>Id.</u> at 1531-32.

25        In short, the Court assumed (without deciding) that the individual named plaintiff's

26   claim had become moot as a result of the offer of judgment in an amount sufficient to make

27   her whole, and then, based on that, determined that the collective action brought by that

28   single employee on behalf of herself and all others similarly situated for alleged violations of

the FLSA was no longer justiciable and was properly dismissed for lack of subject matter jurisdiction.

Genesis, which was an FLSA collective action, is easily distinguishable from Pitts. While Pitts initially alleged both an FLSA collective action and a state law class action, the plaintiff subsequently determined not to pursue the FLSA claims. Pitts, 653 F.3d at 1093-94. Thus, the ruling in Genesis, which was limited to the collective action context, is not directly applicable to the class action context (and thus, does not – as Allstate attempts to argue here – "overrule Pitts sub silentio"). The present case was filed as a proposed Rule 23 class action – which also means that the discussion in Genesis is of only limited applicability, and Pitts remains controlling.

C.    Defendant's Motion

Allstate makes three main arguments in support of its motion – that Pacleb's claims are moot and must be dismissed; that Pacleb lacks standing to assert a violation of the TCPA because he was not the intended recipient of the calls; and that Pacleb fails to allege facts sufficient to support the demand for treble damages.

1.    Whether Pacleb's claims are moot

First, Allstate argues that the unaccepted Rule 68 offer of judgment renders Pacleb's claims moot, and that the court therefore lacks subject matter jurisdiction. Allstate contends that the $10,000 offer of judgment was in an amount that was more than sufficient to satisfy all of Pacleb's alleged damages on his claims, plus costs and attorney's fees, and that it also included provisions that satisfy the claim for injunctive relief. Allstate argues that because Pacleb can obtain complete relief without further litigation, his claims are moot, and because the offer of judgment was made prior to any motion for class certification, there is no longer any controversy between the parties and the FAC must be dismissed for lack of subject matter jurisdiction.

Allstate asserts further that prior to the Supreme Court's April 16, 2013 decision in Genesis, the courts were divided on whether a Rule 68 offer of judgment made prior to the filing of a class certification motion also mooted the claims of the putative class members

United States District Court

For the Northern District of California

1   (citing Damasco, on the one hand, and Pitts and cases from the Third, Fifth, and Tenth

2   Circuits on the other).  Allstate claims, however, that Genesis resolved that Circuit split, in

3   holding that a collective action filed under the FLSA is rendered moot if the defendant

4   makes a Rule 68 offer of judgment in the full amount of the named plaintiff's individual

5   claim before a class certification motion is filed.

6         Allstate also contends that the Genesis Court rejected the reasoning that led the

7   Ninth Circuit in Pitts to conclude that putative class allegations were enough to keep the

8   case alive after the named plaintiff had received a Rule 68 offer of judgment.  Allstate

9   argues that Genesis expressly distinguished all the cases on which Pitts relied, on the

10  basis that all those cases involved situations where class cert had been granted or

11  improperly denied.  Here, Allstate argues, Pacleb is in the same procedural posture as the

12  plaintiff in Genesis because no class cert motion has been filed, and thus, his claims should

13  be dismissed as moot.

14        As for the Genesis Court's emphasis on the fact that Rule 23 actions are

15  fundamentally different from collective actions under the FLSA, Allstate contends that the

16  Court made that observation when it was distinguishing Sosna, Geraghty, and Roper on

17  the basis that in those cases, class certification proceedings had already taken place,

18  whereas in Genesis, the plaintiff's claims became moot before a class cert motion was

19  filed.  Allstate concedes that there are "procedural differences" between Rule 23 class

20  actions and FLSA collective actions, but argues that those differences "primarily affect the

21  certification process."  Allstate claims that since in both Genesis and this case, the named

22  plaintiff's claims became moot before a class certification motion had been filed, the logic of

23  Genesis "applies equally to Rule 23 putative class actions as the mootness principles are

24  the same."

25        In opposition, plaintiff argues that Allstate has misconstrued the holding of Genesis

26  to support the proposition that since the unaccepted offer of judgment was in an amount

27  sufficient to satisfy all of Pacleb's claims, and was made prior to the filing of any motion for

28  class certification, Pacleb's claims are moot.  Plaintiff asserts that this argument is flawed

1   for two reasons.

2       First, plaintiff contends that <u>Genesis</u> explicitly refused to address whether an

3   unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot –

4   because that issue was not before the court, and the plaintiff had conceded that she

5   retained no personal interest in the outcome of the litigation.  Here, plaintiff asserts, he has

6   made no concessions or waivers of any kind.  He did not accept the offer of judgment and

7   does not anticipate accepting it in the future.  Thus, he contends, <u>Genesis</u> is inapplicable.

8       Second, plaintiff argues that the Ninth Circuit in <u>Pitts</u> explicitly held that where a

9   defendant makes an unaccepted Rule 68 offer of judgment that fully satisfies a named

10  plaintiff's individual claims before the named plaintiff files a motion for class certification, the

11  offer does not moot the case.  Plaintiff repeats the <u>Pitts</u> court's argument regarding

12  "inherently transitory" claims, and the application of the relation-back doctrine. Plaintiff

13  contends that the <u>Pitts</u> court extensively considered the exact situation at issue in the

14  present case, while the same scenario was not presented in <u>Genesis</u>.

15      Finally, plaintiff asserts that he retains a concrete interest in the outcome of this

16  litigation, on the basis that the Rules of Civil Procedure give the proposed class

17  representative the right to have a class certified if the requirements of the Rules are met,

18  and that the procedural right to represent a class suffices to satisfy Article III concerns

19  because the class cert question "remains as a concrete, sharply presented issue" even

20  after the named plaintiff's individual claim has expired.  <u>See</u> <u>Pitts</u>, 653 F.3d at 1089 (citing

21  <u>Geraghty</u>, 445 U.S. at 403).

22      As indicated above, the court finds that <u>Genesis</u> does not control this case.  The

23  Supreme Court in <u>Genesis</u> specifically did not decide that an unaccepted Rule 68 offer in

24  an FLSA collective action will moot the named plaintiff's claims, but rather simply assumed

25  it would based on what had transpired in the lower courts.  The Court's ruling was that once

26  it had been determined that the named plaintiff's claims were moot, the case could not be

27  kept on for a conditional certification.

28      It is true that the Court did reject the reasoning that the Ninth Circuit in <u>Pitts</u> used

United States District Court

For the Northern District of California

1   (based on <u>Sosna</u>, <u>Geraghty</u>, and <u>Roper</u>) in the class action context, but it also emphasized

2   that class actions are different than collective actions.  So while the Supreme Court might

3   at some future date actually overrule <u>Pitts</u> and decisions from other Circuits holding that the

4   rule articulated in <u>Genesis</u> also applies in class actions, as of now that has not happened,

5   and <u>Pitts</u> remains good law as far as the court can ascertain.

6          2.       Whether Pacleb has standing to allege violation of TCPA

7          In its second main argument, Allstate contends that Pacleb lacks standing to assert

8   a violation of the TCPA because he was not the intended recipient of the calls.  Allstate

9   cites the portion of the TCPA that makes it unlawful to any person within the United States

10  to "initiate any telephone call to any residential telephone line using an artificial of

11  prerecorded voice to deliver a message without the prior express consent of the called

12  party" unless the call is for emergency purposes.  47 U.S.C. § 227(b)(1)(B).  Allstate

13  contends that the phrase "called party" has been interpreted as meaning "the party to

14  whom the call is directed," or "the intended recipient of the call," and that here, the

15  allegations in FAC show that Pacleb was not the intended recipient of the calls and was not

16  the "called party."

17         In opposition, plaintiff asserts that this part of the motion is incomprehensible, as the

18  FAC alleges violations of 47 U.S.C. § 227(b)(1)(A)(iii) – the provision regarding unsolicited

19  calls to cell phone numbers – not 47 U.S.C. § 227(b)(1)(B) – the provision regarding

20  unsolicited calls to residential landlines.  Plaintiff also argues that Allstate has failed to cite

21  relevant authority holding that a call to a cell phone number that belongs to a particular

22  person is a call that is intended for that person – the regular user and carrier of the phone.

23  Plaintiff contends that he does not know Frank Arnold, had no relationship with Allstate,

24  and never consented to the calls that were made to his cell phone.  He asserts that this is

25  sufficient to confer standing.

26         In its reply, Allstate asserts that Pacleb does not dispute that the phone calls he

27  claims to have received were placed to a man named Frank Arnold.  Allstate then cites to

28  the correct portion of the statute – 47 U.S.C. § 227(b)(1)(A)(iii) – which makes it unlawful

1    for anyone to "make any call (other than a call made for emergency purposes or made with

2    the prior express consent of the called party) using any automatic telephone dialing system

3    . . . to any telephone number assigned to . . . a cellular telephone service . . . or any service

4    for which the called party is charged for the call."

5         Allstate notes that whether the issue involves a residential phone or a cell phone, the

6    TCPA expressly refers to calls made to the "called party" in both contexts.  Allstate argues

7    that courts interpreting this language have concluded that in order to have standing, the

8    plaintiff must have been the intended recipient of the call – the reasoning being that the

9    TCPA provides an exception for calls made with the prior express consent of the "called

10   party," and there is no way that an unintended recipient could provide express consent.

11        Thus, Allstate argues, the only logical interpretation of § 227(b)(1)(A)((iii) is one that

12   requires the party asserting the TCPA claim to be the party to whom the calls were

13   directed. Here, since the FAC alleges that the calls were intended for "Frank Arnold,"

14   Pacleb cannot claim to have been the intended recipient of the calls and therefore lacks

15   standing to maintain an action under the TCPA.

16        The court finds that the question whether the calls were intended for Frank Arnold,

17   or for plaintiff as the account-holder of the cell phone appears to involve a factual dispute,

18   and is thus not appropriate for decision here.

19        3.      Whether demand for treble damages should be dismissed/stricken

20        In its third main argument, Allstate asserts that the court should "dismiss or strike"

21   the "conclusory demand for treble damages," because the FAC does not plead sufficient

22   facts to "state a claim" for treble damages.  Although Allstate refers to "striking" the

23   "demand" for treble damages, as well as "dismissing" it, it appears that Allstate's purpose is

24   to seek dismissal of the second cause of action.  Pacleb does not oppose this part of the

25   motion.  At the hearing, plaintiff's counsel stated that Pacleb did not oppose the motion,

26   and he was amenable to having the second cause of action dismissed.

27        4.      Analysis

28        The court finds that the motion must be GRANTED in part and DENIED in part.  The

United States District Court
For the Northern District of California

15

United States District Court

For the Northern District of California

1   motion to dismiss the second cause of action (alleging knowing and/or willful violations of

2   the TCPA), and the demand for treble damages is GRANTED, based on plaintiff's lack of

3   opposition and plaintiff's counsel's concession at the hearing.

4        With regard to whether Pacleb's claims are moot – even if they are, under <u>Pitts</u>, the

5   entire case cannot be dismissed for lack of subject matter jurisdiction, and Pacleb will still

6   be able to move for class certification. Thus, that part of the motion is DENIED.  The

7   decision in <u>Genesis</u> does not compel a different conclusion, because it did not involve Rule

8   23 class certification.  As the <u>Genesis</u> Court noted, class certification under Rule 23 is

9   "fundamentally different from collective actions under the FLSA" because "a putative class

10  acquires an independent legal status once it is certified under Rule 23" whereas under the

11  FLSA, "'conditional certification' does not produce a class with an independent legal status,

12  or join additional parties to the action" (since the unnamed parties must still "opt in" before

13  they actually become parties).  <u>See</u> <u>Genesis</u>, 133 S.Ct. at 1529.

14       With regard to whether Pacleb has standing, given that the calls appeared to be

15  addressed to someone other than him – this appears to be a factual dispute.  It is unknown

16  at this point, for example, how long he had been assigned that cell phone number, or

17  whether someone named Frank Arnold had previously had the number or had at some

18  point used a cell phone with that number.  Certainly Allstate has not provided a sufficient

19  basis for the court to determine that Pacleb lacks standing.

20                                 **CONCLUSION**

21       In accordance with the foregoing, the motion to dismiss the case for lack of subject

22  matter jurisdiction is DENIED.  The motion to dismiss the second cause of action is

23  GRANTED, based on plaintiff's counsel's concession at the hearing.

24

25  **IT IS SO ORDERED.**

26  Dated:  June 10, 2013                   _____

27                                           PHYLLIS J. HAMILTON
                                             United States District Judge
28