UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA     *ORIGINAL*

BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

RICHARD CHEN, AND FLORENCIO )
PACLEB, ON BEHALF OF        )
THEMSELVES AND ALL OTHERS   )
SIMILARLY SITUATED,         )               PAGES 1 - 27
                            )
          PLAINTIFF,        )
                            )
  VS.                       )               NO. C 13-00685 PJH
                            )
ALLSTATE INSURANCE COMPANY, )
                            )
          DEFENDANT.        )               OAKLAND, CALIFORNIA
_____)               WEDNESDAY, JUNE 5, 2013


**TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR PLAINTIFFS:         KAZEROUNI LAW GROUP APC
                        2700 NORTH MAIN STREET, SUITE 1000
                        SANTA ANA, CALIFORNIA  92705
                BY:  MATTHEW M. LOKER, ATTORNEY AT LAW




FOR DEFENDANT:          BALLARD SPAHR LLP
                        655 WEST BROADWAY, SUITE 1600
                        SAN DIEGO, CALIFORNIA  92101-8494
                BY:  MARK J. LEVIN, ATTORNEY AT LAW




REPORTED BY:       RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

| | |
|---|---|
| 1 | WEDNESDAY, JUNE 5, 2013                              9:38 A.M. |
| 2 | P R O C E E D I N G S |
| 3 | **THE CLERK:**  CALLING CIVIL CASE NO. 13-685, CHEN, |
| 4 | ET AL. VERSUS ALLSTATE INSURANCE COMPANY. |
| 5 | **MR. LOKER:**  GOOD MORNING, YOUR HONOR.  MATT LOKER ON |
| 6 | BEHALF OF PLAINTIFF. |
| 7 | **THE COURT:**  GOOD MORNING. |
| 8 | **MR. LEVIN:**  GOOD MORNING.  MARK LEVIN FOR DEFENDANT |
| 9 | ALLSTATE INSURANCE COMPANY. |
| 10 | **THE COURT:**  ALL RIGHT.  GOOD MORNING. |
| 11 | ALL RIGHT.  THIS MATTER'S ON FOR HEARING ON ALLSTATE'S |
| 12 | MOTION TO DISMISS.  I'VE READ THE PAPERS.  DID YOU WISH TO BE |
| 13 | HEARD FURTHER? |
| 14 | **MR. LEVIN:**  YES, YOUR HONOR.  MAY IT PLEASE THE |
| 15 | COURT, FIRST, I'D LIKE TO THANK THE COURT FOR MY PRO HAC VICE |
| 16 | ADMISSION AND APPRECIATE THE OPPORTUNITY TO APPEAR BEFORE YOU. |
| 17 | I'M HERE FROM PHILADELPHIA. |
| 18 | ALLSTATE HAS MOVED TO DISMISS THE COMPLAINT ON TWO |
| 19 | GROUNDS, ONE FOR LACK OF SUBJECT MATTER JURISDICTION UNDER |
| 20 | RULE 12(B)(1), AND FOR FAILURE TO STATE A TELEPHONE CONSUMER |
| 21 | PROTECTION ACT CLAIM, TCPA CLAIM, UNDER RULE 12(B)(6). |
| 22 | IT IS OUR CONTENTION THAT, AND WE HAVE SET FORTH IN OUR |
| 23 | BRIEFS, THAT SUBJECT MATTER JURISDICTION DOES NOT EXIST |
| 24 | BECAUSE ALLSTATE HAS MADE A RULE 68 OFFER OF JUDGMENT WHICH |
| 25 | HAS MOOTED MR. PACLEB'S INDIVIDUAL AND PUTATIVE CLASS ACTION |

1   CLAIMS.

2      THERE WERE TWO PLAINTIFFS.  MR. CHEN ACCEPTED ALLSTATE'S

3   RULE 68 OFFER.  AND IN THE WORDS OF HIS LAWYER, HE IS NO

4   LONGER A VIABLE PLAINTIFF.  HIS CLAIMS HAVE BEEN COMPLETELY

5   RESOLVED.

6      **THE COURT:**  ALL RIGHT.  BUT I NOTE FROM THE DOCKET

7   THAT HE HAS NOT BEEN DISMISSED FROM THE CASE.

8      **MR. LEVIN:**  NO, WE'RE IN THE PROCESS, YOUR HONOR, OF

9   DOINGS THAT.  THERE IS AN AGREEMENT IN PRINCIPLE.  THE OPEN

10   ISSUE WAS AN AMOUNT FOR ATTORNEY'S FEES, AND WE'VE AGREED TO

11   THAT.  AND NEXT ON THE AGENDA AFTER THIS HEARING IS WORKING

12   WITH THEM TO DOCUMENT WHAT WILL BE ON THE RECORD REGARDING HIS

13   DISMISSAL.  HE HAS FILED AN ACCEPTANCE OF --

14      **THE COURT:**  YES.

15      **MR. LEVIN:**  -- OF THE OFFER.  AND WE -- WE WILL

16   FIGURE OUT WHAT DOCUMENTATION IS APPROPRIATE TO DISMISS, BUT

17   HE IS NO LONGER A PLAINTIFF.  HE HAS SETTLED HIS CLAIMS.

18      **THE COURT:**  OKAY.  BUT WE NEED A DISMISSAL OF HIM.

19      **MR. LEVIN:**  YES.  YEAH, WE'RE AWARE OF THAT, AND

20   WE'LL SUBMIT APPROPRIATE DOCUMENTATION.  THE CHECK IS BEING

21   CUT.  I DON'T HAVE IT YET, BUT ONCE WE -- THE MONEY'S BEEN

22   PAID, WE WILL FILE THE APPROPRIATE PAPERS.

23      AS TO THE REMAINING PLAINTIFF, MR. PACLEB, THERE ARE TWO

24   ISSUES:  ONE, DID ALLSTATE'S OFFER MOOT HIS INDIVIDUAL CLAIMS;

25   AND, TWO, DID THE OFFER MOOT HIS PUTATIVE CLASS ACTION CLAIMS.

1    IT'S UNDISPUTED THAT THE OFFER WAS MORE THAN MR. PACLEB

2  COULD RECOVER IF HE STAYED IN COURT, PURSUED HIS CLAIMS AND

3  PREVAILED.  UNDER NINTH CIRCUIT LAW, THAT IS SUFFICIENT TO

4  MOOT HIS INDIVIDUAL CLAIMS BECAUSE THERE'S NOTHING MORE THAN

5  HE COULD RECOVER -- THAT HE COULD RECOVER IF HE STAYED IN

6  COURT.

7    AND AT PAGE 4 OF OUR REPLY, WE'VE CITED TWO NINTH CIRCUIT

8  CASES AND SEVERAL NORTHERN DISTRICT OF CALIFORNIA AND OTHER

9  CALIFORNIA FEDERAL DISTRICT COURT CASES FOR THAT PROPOSITION.

10    AND I NOTE THAT ALLSTATE HAS KEPT ITS OFFER OPEN FOR

11  MR. PACLEB UNTIL HE ACCEPTS IT OR ALLSTATE WITHDRAWS IT.

12    BUT IT'S CLEAR THAT EVEN IF HE HAD ABSOLUTELY AND

13  UNCONDITIONALLY REJECTED THE OFFER, THE COURT WOULD STILL BE

14  IN A POSITION TO RULE ON THE MOOTNESS AND SUBJECT MATTER

15  JURISDICTION ISSUES.

16    EVERY COURT THAT HAS EVER ISSUED AN OPINION ON THIS IS IN

17  THE POSITION OF HAVING AN OFFER THAT HAS NOT BEEN ACCEPTED,

18  BUT THEY GO ON TO RULE ON THE LEGAL ISSUES.  OBVIOUSLY IF THE

19  OFFER IS ACCEPTED, THERE'S NO CASE ANYMORE.

20    AS TO THE PUTATIVE CLASS CLAIMS, MR. PACLEB ARGUES THAT

21  THE CASE IS NOT MOOT BECAUSE IT CONTAINS CLASS ACTION

22  ALLEGATIONS, AND HE RELIES ENTIRELY ON THE NINTH CIRCUIT'S

23  OPINION IN PITTS VS. TERRIBLE HERBST.  AND I FINALLY FIGURED

24  OUT WHAT TERRIBLE HERBST IS.

25        **THE COURT:**  WHAT IS IT?

1    **MR. LEVIN:** IT IS AN OIL COMPANY THAT HAS A LOT OF

2   CONVENIENT STORES, ALTHOUGH YOU WOULD NEVER GUESS THAT FROM

3   THE -- FROM THE TITLE. I LOOKED IT UP ON WIKIPEDIA.

4        SO THAT WAS AN EMPLOYMENT CASE. HE WAS AN EMPLOYEE OF --

5   PITTS WAS AN EMPLOYEE OF TERRIBLE HERBST. HOWEVER, THE U.S.

6   SUPREME COURT IN THE GENESIS HEALTHCARE CASE ISSUED EARLIER

7   THIS SPRING OVERRULED THE PITTS CASE SUB SILENTIO. AND TWO

8   ASPECTS OF THE U.S. SUPREME COURT'S OPINION ARE IMPORTANT.

9   NUMBER ONE, THAT IT FOR ALL PRACTICAL PURPOSES, OVERRULED THE

10  NINTH CIRCUIT'S PITTS DECISION; AND NUMBER TWO --

11           **THE COURT:** WELL, YOU SAY "FOR ALL PRACTICAL

12  PURPOSES," BUT IT CLEARLY DID NOT EXPRESSLY OVERRULE PITTS --

13           **MR. LEVIN:** WELL --

14           **THE COURT:** -- IN THAT IT INVOLVED A -- PITTS, I

15  BELIEVE, WAS A COLLECTED ACTION, WAS IT NOT?

16           **MR. LEVIN:** PITTS WAS A FAIR LABOR STANDARDS ACT --

17  FLSA ACTION.

18           **THE COURT:** RIGHT.

19           **MR. LEVIN:** AS WAS GENESIS HEALTHCARE. AND THE NINTH

20  CIRCUIT IN PITTS HAD BEEN IN THE SAME CAMP AS THE THIRD

21  CIRCUIT IN GENESIS HEALTHCARE.

22       THE SUPREME COURT IN GENESIS HEALTHCARE OVERRULED AND

23  REVERSED THE THIRD CIRCUIT, AND ALL THE REASONING THAT THE

24  THIRD CIRCUIT HAD RELIED ON WAS OVERRULED. IT'S THE SAME

25  REASONING THAT THE NINTH CIRCUIT IN PITTS RELIED ON.

1     AND, IN FACT, THE PLAINTIFF, IN THE SUPREME COURT IN THE

2     GENESIS HEALTHCARE CASE, IN HER BRIEF ASKED THE COURT TO

3     FOLLOW PITTS.  THE COURT REFUSED TO DO THAT AND OVERTURNED THE

4     THIRD CIRCUIT AND ALL THE SAME REASONING THAT PITTS RELIED ON.

5          **THE COURT:**  WHAT ARE THE FACTUAL DIFFERENCES BETWEEN

6     PITTS AND GENESIS SUCH THAT YOU BELIEVE GENESIS OVERRULED

7     PITTS?

8          **MR. LEVIN:**  WELL, I DON'T KNOW THAT THERE ARE REALLY

9     ANY FACTUAL DIFFERENCES.  BOTH INVOLVED OFFERS OF JUDGMENT

10    MADE BEFORE THERE WAS A MOTION FOR -- IN THE LABOR CONTEXT,

11    IT'S CALLED OF A MOTION FOR CONDITIONAL CERTIFICATION.  AND

12    THEY ALL RELIED ON THE SAME THREE U.S. SUPREME COURT EARLIER

13    DECISIONS THAT HAD BEEN DECIDED UNDER RULE 23, SOSNA, AND

14    GARRITY, AND ROPER.

15    AND I DON'T THINK THERE'S ANY FACTUAL DISTINCTION BETWEEN

16    PITTS AND GENESIS THAT WOULD PRODUCE ANY -- ANY DIFFERENT

17    RESULT.

18    AS I READ THE PITTS OPINION, TO ME, IT SOUNDED EXACTLY

19    LIKE WHAT THE PLAINTIFF IN GENESIS HEALTHCARE WAS ARGUING.

20    AND THEY WERE ALL IN THE SAME FACTUAL POSITION AS IS PLAINTIFF

21    PACLEB IN THIS CASE.  THERE'S NO CLASS CERTIFICATION MOTION

22    FILED.

23    AND ALLSTATE HAS MADE AN OFFER OF JUDGMENT THAT IS MORE

24    THAN HE CAN RECOVER IF HE STAYED IN COURT.

25          **THE COURT:**  ARE THERE ANY DISTINCTIONS BETWEEN THE

1  RULE 23 CLASS ACTION SOUGHT IN THIS CASE AND THE COLLECTIVE

2  ACTION THAT WAS AT ISSUE IN THE CASES YOU'RE RELYING UPON?

3  **MR. LEVIN:**  WELL, THERE ARE DISTINCTIONS BETWEEN RULE

4  23 PROCEDURE AND THE FAIR LABOR STANDARD ACT PROCEDURES.  BUT

5  THEY PRIMARILY --

6  **THE COURT:**  DIDN'T THE SUPREME COURT IN GENESIS

7  RECOGNIZE THE IMPORTANCE OF THOSE DISTINCTIONS?

8  **MR. LEVIN:**  IT -- IT DID, BUT I THINK YOU HAVE TO PUT

9  THE WORDS THAT IT USED IN CONTEXT.  JUSTICE THOMAS SAID THAT

10 RULE 23 ACTIONS ARE FUNDAMENTALLY DIFFERENT FROM COLLECTIVE

11 ACTIONS UNDER THE FLSA.  BUT THE DIFFERENCES ARE REALLY AT THE

12 CERTIFICATION STAGE, NOT AT THE STAGE WHERE A CERTIFICATION

13 MOTION HAS NOT EVEN BEEN FILED.  AND THAT'S BECAUSE UNDER RULE

14 23, IF A CLASS IS CERTIFIED, THEN PUTATIVE CLASS MEMBERS WHO

15 THEN BECOME CLASS MEMBERS HAVE LEGAL STATUS INDEPENDENT OF THE

16 NAMED PLAINTIFF.

17 THE SAME IS NOT TRUE UNDER THE LABOR PROCEDURE WHERE

18 PEOPLE OPT IN AS OPPOSED TO HAVING TO OPT OUT.  BUT THAT'S ALL

19 THE WAY AT THE OTHER END OF THE CERTIFICATION PROCESS.

20 AND THE PLAINTIFF IN GENESIS HEALTHCARE IN THE

21 SUPREME COURT WAS RELYING ON THESE THREE PRIOR SUPREME COURT

22 CASES, SOSNA, GARRITY AND ROPER.  AND JUSTICE THOMAS SAYS,

23 WELL, THEY DON'T HELP YOU BECAUSE THEY'RE RULE 23 CASES IN

24 WHICH CLASS PROCEEDINGS HAD ALREADY BEEN HELD.

25 AND IN TWO OF THEM, CLASS CERTIFICATION WAS GRANTED.  IN

1  THE SECOND, IT HAD BEEN DENIED BUT THE PLAINTIFF WAS SEEKING

2  TO APPEAL THAT.  AND HE SAID, YOU KNOW, THOSE CASES ARE MUCH

3  DIFFERENT BECAUSE THE PLAINTIFF IN GENESIS HAD NOT EVEN FILED

4  A MOTION FOR -- FOR CONDITIONAL CERTIFICATION.

5      IN THESE OTHER SUPREME COURT CASES, CLASS CERTIFICATION

6  HAD BEEN HELD, AND THOSE CLASS MEMBERS HAD OBTAINED RIGHTS

7  WHICH ARE DIFFERENT.  BUT BEFORE CERTIFICATION -- THIS IS A

8  VERY IMPORTANT POINT.  BEFORE A MOTION IS EVEN FILED, THERE'S

9  NO HARM IN HAVING A NAMED PLAINTIFF'S CLAIM DISMISSED.

10     AND THERE'S NO PREJUDICE TO THE PUTATIVE CLASS MEMBERS

11  BECAUSE, A -- WELL, MR. CHEN HAS SETTLED HIS CLAIMS.  THAT

12  HASN'T HARMED ANY PUTATIVE CLASS MEMBERS.  B, THE NINTH

13  CIRCUIT -- AND THIS IS BY ANALOGY -- HAS HELD THAT A COURT,

14  DISTRICT COURT, CAN DISMISS A NAMED PLAINTIFF'S CLAIMS ON

15  SUMMARY JUDGMENT BEFORE CONSIDERING CLASS CERTIFICATION.

16     THAT IS THE CASE OF WRIGHT, W-R-I-G-H-T, VS. SCHOCK,

17  S-C-H-O-C-K, 742, F.2D, 541.  AND THE NINTH CIRCUIT SAID,

18  IT -- THERE'S NO HARM IN A PUTATIVE -- I'M SORRY -- IN A NAMED

19  PLAINTIFF SETTLING HIS OR HER CLAIMS BEFORE A CLASS

20  CERTIFICATION IS CONSIDERED BECAUSE THE CLASS MEMBERS REMAIN

21  FREE TO BRING THEIR OWN CLAIMS.

22     THAT'S EXACTLY WHAT JUSTICE THOMAS SAID IN GENESIS

23  HEALTHCARE.  AND ALSO THE NINTH CIRCUIT MADE THE POINT, WHICH

24  WOULD ALSO APPLY HERE, THAT THERE'S NO STATUTE OF LIMITATIONS

25  PROBLEM BECAUSE STATUTE OF LIMITATIONS ARE TOLLED FOR PUTATIVE

1    CLASS MEMBERS WHILE A CLASS ACTION IS PENDING.

2         THAT'S THE AMERICAN PIPE CASE, 414 US 538 1974.

3         AGAIN, MR. CHEN HAS ACCEPTED ALLSTATE'S OFFER.  IF

4    MR. PACLEB HAD ACCEPTED THE OFFER, THERE WOULD BE -- THERE

5    WOULD BE NO CASE LEFT.

6         PUTATIVE CLASS MEMBERS COULD THEN DO AS THEY WISHED IN

7    TERMS OF PURSUING THEIR OWN RIGHTS TO RELIEF.  AND I WILL SAY

8    THAT THE DAMAGES AVAILABLE UNDER THE TCPA ARE VERY ATTRACTIVE

9    TO POTENTIAL PLAINTIFFS, SO THERE'S NO SHORTAGE OF PLAINTIFFS

10   BRINGING TCPA CASES.

11        SO WHEN -- TO COME BACK TO YOUR QUESTION, ISN'T THE LABOR

12   PROCEDURE DIFFERENT THAN RULE 23, YES, BUT NOT IN A WAY THAT

13   AFFECTS THIS CASE.  NONE OF THAT AFFECTS THE POSTURE THAT

14   GENESIS WAS IN -- THE PLAINTIFF IN PITTS AND MR. PACLEB IN

15   THIS CASE, WHERE A CLASS CERTIFICATION MOTION HAS NOT YET BEEN

16   FILED.

17        AND, AGAIN, WITH RESPECT TO RULE 23, AS WE POINTED OUT IN

18   OUR PAPERS, RULE 23 WAS AMENDED IN 2003 TO ELIMINATE THE NEED

19   FOR COURT APPROVAL OF AN INDIVIDUAL NAMED PLAINTIFF'S

20   SETTLEMENT.

21        PRIOR TO THAT, IT WAS UNCLEAR WHETHER THE COURT HAD TO

22   APPROVE THE SETTLEMENT OF A NAMED PLAINTIFF'S INDIVIDUAL

23   CLAIMS.

24        THE RULE IS AMENDED TO SAY COURT APPROVAL IS NOT REQUIRED.

25   AND, IN FACT, CLASS ACTIONS OR ACTIONS BROUGHT AS CLASS

1  ACTIONS ROUTINELY SETTLED ON AN INDIVIDUAL BASIS BEFORE CLASS

2  CERTIFICATION.

3      ALSO IN THE 1980'S, CONGRESS HAD CONSIDERED AMENDING RULE

4  63 TO EXCLUDE RULE 23 CLASS ACTIONS BUT DECIDED NOT TO DO SO.

5  SO TO ME -- AND THERE ARE PRINCIPLES OF STATUTORY CONSTRUCTION

6  HERE THAT I THINK WOULD BE APPLICABLE IN THE RULES CONTEXT

7  THAT THE REJECTION OF AMENDMENTS TO RULE 68 SHOWS THAT IT

8  WOULD -- THAT THAT RULE WAS INTENDED TO APPLY TO RULE 23 SUCH

9  AS THIS CASE.

10     AGAIN, THE -- THE AUTHORITIES THAT THE NINTH CIRCUIT

11 RELIED ON IN PITTS, THERE ARE REALLY THREE THEORIES THAT THE

12 NINTH CIRCUIT WAS RELYING ON IN SAYING THAT A CASE WILL BE

13 KEPT ALIVE IF THERE ARE PUTATIVE CLASS ALLEGATIONS EVEN IF THE

14 NAMED PLAINTIFFS' CLAIMS HAVE BEEN BECOME MOOT.  AND THEY ARE

15 THE RELATION-BACK DOCTRINE, THE INHERENTLY TRANSITORY

16 DOCTRINE, AND THE SORT OF PUBLIC POLICY DOCTRINE IN ROPER THAT

17 IT'S NICE TO HAVE CLASS ACTIONS BECAUSE THEY -- THEY PROMOTE

18 EFFICIENCY AND THAT SORT OF THING IN THE DISPOSITION OF

19 CLAIMS.

20     BUT THE SUPREME COURT IN GENESIS HEALTHCARE HELD THAT THE

21 RELATION-BACK DOCTRINE DOES NOT APPLY WHERE THE NAMED

22 PLAINTIFF HAS NOT FILED A CERTIFICATION MOTION.  THE COURT

23 ALSO SAID THAT THE INHERENTLY TRANSITORY CONCEPT DOES NOT

24 APPLY WHERE THE PLAINTIFF, AS IN THIS CASE, IS SEEKING MONEY

25 DAMAGES.  AND AS FOR THE ROPER CASE AND ITS STATEMENT THAT YOU

1  SHOULDN'T LET DEFENSE -- DEFENSE PARTIES PICK OFF THE NAMED

2  PLAINTIFF, JUSTICE THOMAS SAID THAT WAS DICTA, AND HE EVEN

3  QUESTIONED ROPER'S CONTINUING CLAIM -- VALIDITY.

4  SO, AGAIN, IN DISTINGUISHING SOSNA AND GARRITY AND ROPER,

5  THE GENESIS HEALTHCARE COURT REJECTED ALL OF THE REASONING

6  THAT LED THE NINTH CIRCUIT IN PITTS AND THE THIRD CIRCUIT IN

7  GENESIS HEALTHCARE TO CONCLUDE THAT MERELY ALLEGING CLASS

8  ALLEGATIONS IS ENOUGH TO KEEP THE CASE ALIVE IF THE NAME

9  PLAINTIFFS' CLAIMS HAVE BEEN MOOTED BY AN OFFER OF JUDGMENT

10  THAT MORE THAN SATISFIES THEIR -- THEIR CLAIMS.

11  NOW, WE HAVE ANOTHER BASIS.

12  DOES YOUR HONOR HAVE ANY ADDITIONAL QUESTIONS CONCERNING

13  THE SUBJECT MATTER JURISDICTION ISSUE?

14  **THE COURT:**  NO.

15  **MR. LEVIN:**  OKAY.

16  ON THE 12(B)(6) MOTION, FIRST OF ALL, PACLEB HAS DEMANDED

17  TREBLE DAMAGES ALLEGING THAT ALLSTATE'S CONDUCT WAS WILLFUL OR

18  KNOWING.  AND IF THE WILLFULNESS AND KNOWING ARE PROVED, THEN

19  THAT ENTITLES THEM TO TREBLE DAMAGES.  BUT THERE ARE NO FACTS

20  ALLEGED AND -- MERELY THE FORMULAIC RECITATION SAYING, WILLFUL

21  AND KNOWING VIOLATIONS.

22  WE DON'T THINK THAT THAT MEETS THE PLEADING STANDARD SET

23  FORTH BY THE SUPREME COURT IN THE IQBAL AND TWOMBLY CASES AND

24  ALSO THE NINTH CIRCUIT CASE WE HAD CITED FAULKNER VS. ADT, A

25  2013 CASE.  THE NINTH CIRCUIT SAID THAT A THREAD-BARE RECITAL

1   OF STATUTORY ELEMENTS UNDER CALIFORNIA'S PRIVACY LAW GOVERNING

2   THE TAKING OF PHONE CALLS IS INSUFFICIENT TO SURVIVE A MOTION

3   TO DISMISS.

4       AND I NOTE THAT MR. PACLEB IN -- HAS NOT EVEN RESPONDED TO

5   OUR ARGUMENT THAT HIS ALLEGATIONS OF WILLFULNESS ARE LEGALLY

6   INSUFFICIENT.

7       THE SECOND BASIS FOR OUR MOTION IS THAT MR. PACLEB LACKS

8   STATUTORY STANDING TO PURSUE A TCPA VIOLATION BECAUSE HE IS AN

9   UNINTENDED RECIPIENT OF THE CALLS.  IT'S UNDISPUTED HERE AND

10  HE PLEADS IN HIS COMPLAINT THAT THE CALLS HE RECEIVED WERE FOR

11  A PERSON CALLED FRANK ARNOLD.  NOBODY WAS INTENTIONALLY

12  CALLING MR. PACLEB.  THEY WERE CALLING FRANK ARNOLD.

13      AND THE TCPA SECTION UNDER WHICH HE HAS SUED USES THE TERM

14  "CALLED PARTY," C-A-L-L-E-D PARTY, "CALLED PARTY."  AND THE

15  CALL HAS TO BE MADE TO A "CALLED PARTY" IN ORDER TO HAVE ANY

16  BASIS FOR LIABILITY UNDER THE TCPA.

17      IT'S OUR CONTENTION, AND -- AND I ACKNOWLEDGE THERE IS A

18  SPLIT OF AUTHORITY ON THIS ISSUE, BUT WE HAVE CITED BOTH THE

19  CELLCO CASE FROM THE DISTRICT OF NEW JERSEY AND THE LEYSE CASE

20  FROM THE SOUTHERN DISTRICT OF NEW YORK, WHICH HOLD THAT THE

21  "CALLED PARTY" MEANS THE INTENDED RECIPIENT OF THE CALL.  IN

22  OTHER WORDS, IT WOULD BE FRANK ARNOLD, NOT MR. PACLEB, THAT IS

23  THE PERSON WHO HAS STATUTORY STANDING TO PURSUE A CLAIM FOR

24  VIOLATION.  AND THE REASONING THERE IS THAT IN THE -- IN THE

25  STATUTE, THERE IS AN EXCEPTION TO LIABILITY.

1  **THE COURT:** BUT ISN'T -- I MEAN, THE WHOLE POINT OF

2  THE STATUTE, THOUGH, IS TO PREVENT UNWARRANTED OR UNSOLICITED

3  OR UNAGREED-UPON CALLS TO A CELL PHONE WHICH MIGHT -- FOR

4  WHICH THE HOLDER OF THE PHONE NUMBER MIGHT HAVE TO PAY FOR

5  SEPARATELY.  SO WHAT REAL DIFFERENCE DOES IT MAKE IF THE

6  INTENDED PARTY WAS SOMEONE OTHER THAN THE PERSON TO WHOM THE

7  NUMBER WAS ASSIGNED BECAUSE IT'S THAT PERSON WHO'S GOING TO

8  ULTIMATELY HAVE TO PAY FOR THE CALL?

9  **MR. LEVIN:** WELL, IT DOES -- IT DOES MAKE A

10  DIFFERENCE, BECAUSE LET'S SAY THAT YOUR HONOR HAD A CELL PHONE

11  NUMBER -- IF I HAD A CELL PHONE NUMBER AND I GAVE PERMISSION

12  FOR A COMPANY TO SEND ME TEXT MESSAGES OVER THE CELL PHONE.

13  YEARS LATER, I GET RID OF THAT CELL PHONE, THE NUMBER GETS

14  REASSIGNED TO MY OPPONENT AND THE COMPANY DOESN'T KNOW THAT.

15  THE COMPANY STILL THINKS IT HAS PERMISSION TO CALL THAT

16  NUMBER.  AND IT CALLS THAT NUMBER AND SAYS, WE'RE LOOKING FOR

17  MARK LEVIN.  AND MY OPPONENT SAYS, WELL, YOU KNOW, I'M NOT

18  MARK LEVIN.  I THINK THAT'S THE TYPE OF SITUATION, ESPECIALLY

19  WITH THE KINDS OF DAMAGES THAT ARE IN THE STATUTES, WHICH

20  ARE --

21  **THE COURT:** BUT DON'T WE NEED TO KNOW MORE

22  INFORMATION THAN WE HAVE NOW BEFORE THAT DECISION COULD BE

23  MADE?

24  **MR. LEVIN:** WELL, THE -- BOTH --

25  **THE COURT:** DO WE KNOW, FOR INSTANCE, WHETHER OR NOT

1    THIS PHONE NUMBER WAS PREVIOUSLY ASSIGNED TO FRANK ARNOLD?

2          **MR. LEVIN:**  WE DO NOT.  THERE'S NO RECORDS YET.  BUT

3    THE CASES THAT WE'VE RELIED ON HAVE BEEN ABLE TO MAKE THAT

4    DETERMINATION IN A PRELIMINARY MOTION.

5       SO I BELIEVE --

6          **THE COURT:**  I'M NOT -- I'M NOT LIKELY TO DO THAT.

7          **MR. LEVIN:**  I UNDERSTAND, AND I ACKNOWLEDGE THERE ARE

8    CASES GOING THE OTHER WAY.  BUT OUR -- OUR PRINCIPAL ARGUMENT

9    HERE IS REALLY THE SUBJECT MATTER JURISDICTION ARGUMENT AND

10   THE ARGUMENT THAT NOTHING MORE THAN A BARE-BONES PLEADING HAS

11   BEEN PROVIDED FOR THE --

12         **THE COURT:**  NO, I UNDERSTAND.

13         **MR. LEVIN:**  -- FOR THE WILLFULNESS.

14         **THE COURT:**  I UNDERSTAND.  ANOTHER THING THAT

15   OCCURRED TO ME ON THE WHOLE WILLFULNESS QUESTION IS THERE --

16   IN YOUR VIEW, IS THIS A STRICT LIABILITY STATUTE IF A CALL IS

17   MADE, REGARDLESS OF WHAT THE INTENT WAS OF THE CALLER, IS THE

18   CALLER LIABLE IF IT WAS TO A -- THE INTENDED CALLED PARTY?

19                     (SIMULTANEOUS COLLOQUY.)

20         **THE COURT:**  EXCUSE ME.  LET ME FINISH.

21         **MR. LEVIN:**  I'M SORRY, YOUR HONOR.

22         **THE COURT:**  I UNDERSTAND YOUR DISTINCTION BETWEEN THE

23   INTENDED RECIPIENT AND THE NON- -- AND A NON-INTENDED

24   RECIPIENT, BUT LET'S JUST ASSUME FOR PURPOSE OF MY QUESTION

25   THAT THE CALL WAS TO AN INTENDED RECIPIENT.  DOES IT -- TO --

1    LET'S JUST SAY THAT THE CALL WAS TO A PARTICULAR NUMBER

2    IRRESPECTIVE OF WHO THE HOLDER OF THAT NUMBER WAS.

3        IN YOUR VIEW, IS THERE STRICT LIABILITY ON THE PART OF THE

4    CALLER IF THEY DIDN'T HAVE PRIOR AUTHORIZATION OR IT WASN'T AN

5    EMERGENCY?

6            **MR. LEVIN:**  WELL, WE -- WE WOULD CERTAINLY -- WE

7    WOULD CERTAINLY TRY TO TAKE THE POSITION THAT THERE IS A

8    GOOD-FAITH EXCEPTION THERE WHERE REASONABLE BUSINESS JUDGMENT

9    HAS BEEN EXERCISED.  BUT I'M NOT SURE THAT THAT ISSUE HAS BEEN

10   FULLY RESOLVED.

11       I'VE SEEN THE TCPA DESCRIBED AS A STRICT LIABILITY STATUTE

12   BUT WOULD CERTAINLY RESERVE ALL OUR RIGHTS TO -- TO ARGUE

13   OTHERWISE.

14           **THE COURT:**  YEAH.  IT SEEMS TO ME THAT THE WHOLE

15   QUESTION OF WILLFULNESS IS NOT SO MUCH A STANDING ISSUE AS I

16   THINK IT GOES TO PERHAPS THE WHOLE QUESTION OF WHETHER OR NOT

17   THE CALLER HAS TO BE AN INTENDED RECIPIENT OR NOT.  I MEAN,

18   ISN'T IT A DEFENSE THAT -- AS YOU'VE ARGUED ESSENTIALLY, A

19   DEFENSE TO LIABILITY?  YOUR -- THE PERSON WHO HELD THE PHONE

20   NUMBER ISN'T THE PERSON WHO WE INTENDED TO CALL.

21           **MR. LEVIN:**  YES.  WELL, WE'VE RAISED IT AS A -- AS A

22   12(B)(6) PLEADING ISSUE ON THE FACE OF THE COMPLAINT BECAUSE

23   THERE ARE NO FACTS ALLEGED THAT WOULD SUPPORT A -- A FINDING

24   OF WILLFULNESS.  I MEAN, WHAT HE HAS TO PROVE IS THAT THE

25   DEFENDANT MADE AN UNSOLICITED COMMUNICATION KNOWING OR HAVING

1    REASON TO KNOW THAT SUCH CONDUCT WAS IN VIOLATION OF THE

2    STATUTE.

3        AND THERE'S NO -- THERE ARE NO FACTS THAT WOULD SUPPORT

4    THAT KIND OF ALLEGATION.

5            **THE COURT:**  OKAY.

6            **MR. LEVIN:**  SO WE'RE SAYING IT'S A PLEADING

7    DEFICIENCY.

8            **THE COURT:**  ALL RIGHT.  ANYTHING ELSE?

9            **MR. LEVIN:**  NO, YOUR HONOR.  THANK YOU.

10           **THE COURT:**  ALL RIGHT.  LET'S START FIRST WITH THE

11   LATTER ISSUE.

12           **MR. LOKER:**  THE WILLFULNESS ISSUE?

13           **THE COURT:**  I'M NOT SURE.  WHAT IS YOUR POSITION ON

14   THAT, GIVEN THAT YOU DIDN'T --

15           **MR. LOKER:**  WE DON'T OPPOSE THAT FOR THE PURPOSE OF

16   THIS ACTION.  WILLFULNESS IS A VERY HIGH STANDARD, AND WE JUST

17   DON'T FEEL THAT IT'S AS -- GOOD USE OF THE COURT'S TIME TO TRY

18   AND ARGUE THAT ISSUE, SO WE'RE JUST GOING TO GO FOR THE

19   NEGLIGENT VIOLATIONS IN THIS CASE.

20           **THE COURT:**  SO YOU'RE NOT OPPOSED TO THE DISMISSAL OF

21   THE SECOND CAUSE OF ACTION WHICH PLEADS A WILLFUL VIOLATION OF

22   TCPA.

23           **MR. LOKER:**  CORRECT.  WE'RE ONLY GOING AFTER THE

24   NEGLIGENT VIOLATION.

25           **THE COURT:**  ALL RIGHT.  SO I'M GOING TO DISMISS THE

1    SECOND CAUSE OF ACTION.

2              **MR. LOKER:**  YES, YOUR HONOR.

3              **THE COURT:**  ALL RIGHT.

4         ALL RIGHT.  THEN WITH REGARD TO THE ARGUMENTS RAISED --

5    THE RULE 68 OFFER --

6              **MR. LOKER:**  SURE.

7              **THE COURT:**  -- AND MOOTNESS --

8              **MR. LOKER:**  OKAY.

9              **THE COURT:**  -- I IMAGINE YOU HAVE A DIFFERENT VIEW AS

10   TO THE DIFFERENCES BETWEEN THE SUPREME COURT CASE AND YOUR

11   CASE.

12             **MR. LOKER:**  OF COURSE, YOUR HONOR.  I APPRECIATE IT.

13        SO I'LL JUST START WITH THE INDIVIDUAL ACTION AS -- AS

14   MR. LEVIN STARTED WITH.  WE SEE, YOU KNOW, A NUMBER OF

15   DIFFERENCES BETWEEN GENESIS AND PITTS AND THE SITUATION AT

16   BAR.

17        FIRST, WITH REGARD TO GENESIS AND THE INDIVIDUAL CLAIMS OF

18   MS. SYMCZYK, I BELIEVE IT'S PRONOUNCED.  THE REASON THAT

19   GENESIS ASSUMED FOR THE PURPOSES OF THAT CASE THAT HER CLAIM

20   WAS MOOT WAS BECAUSE MS. SYMCZYK DIDN'T TIMELY MAKE THE

21   ARGUMENT.  IN FACT, ON TWO SEPARATE OCCASIONS, MS. SYMCZYK

22   CONCEDED THAT THE RULE 16 OFFER FROM GENESIS FULLY SATISFIED

23   HER CLAIMS.  THE FIRST TIME THAT MS. SYMCZYK ATTEMPTED TO

24   ARGUE AGAINST THAT ASSUMPTION WAS WHEN SHE PRESENTED HER BRIEF

25   BEFORE THE U.S. SUPREME COURT, WHICH, YOU KNOW, IS TOO LATE.

1    SO THE ARGUMENT WAS WAIVED.  AND FOR PURPOSES OF GENESIS, THEY

2    JUST ASSUMED THAT AN UNACCEPTED OFFER MOOTED THE INDIVIDUAL

3    CLAIM.

4         AND ALSO WITH REGARD TO RULE 68 AND THE INDIVIDUAL CLAIM,

5    THERE'S NOTHING IN RULE 68 THAT ALLOWS A COURT TO ENTER A

6    JUDGMENT AGAINST, YOU KNOW, A PLAINTIFF WITHOUT THE PLAINTIFF

7    FIRST ACCEPTING IT.

8         THE PLAINTIFF HAS TO ACCEPT IN WRITING, AND THERE'S NO

9    REQUIREMENT IN RULE 68 FOR THE PLAINTIFF TO REJECT IN WRITING.

10        OUR FAILURE TO RESPOND TO ALLSTATE'S RULE 68 IN OUR

11   OPINION REJECTED IT AND WOULD ALLOW MS. -- I'M SORRY --

12   MR. PACLEB TO MOVE FORWARD WITH THE INDIVIDUAL CLAIM.

13        AND ALSO MR. LEVIN CITED TO FOUR CASES.  ONE OF THEM IS A

14   NINTH CIRCUIT CASE, THE OTHER, I BELIEVE, ARE JUST CIRCUIT

15   CASES THAT WOULD MOOT A INDIVIDUAL CLAIMANT'S CLAIMS DUE TO AN

16   UNACCEPTED OFFER AT JUDGMENT.

17        THE DIFFERENCE WITH THOSE CASES IS FIRST, MARSCHALL --

18   IT'S THE ONLY CLASS ACTION THAT WAS CITED IN THE REPLY.  AND

19   THE REASON THE -- IN MARSCHALL THAT THE RULE 68 OFFER MOOTED

20   THAT PARTICULAR CLAIMANT'S CLAIMS WAS BECAUSE THE MOTION FOR

21   CLASS CERTIFICATION WAS UNTIMELY.  SINCE IT WAS UNTIMELY,

22   THE -- I FORGET WHO THE JUDGE IS -- BUT THE COURT SAID THAT

23   THE CLASS CLAIMS ARE NOW MOOT AND FORCED THE PLAINTIFF TO

24   ACCEPT THOSE CLAIMS, OR SORRY, THE RULE 68 OFFER OF JUDGMENT.

25

1    AND GOLDSTEIN, SCOTT, AND REED -- I'M SURPRISED TO SEE

2   THAT THOSE CASES ARE CITED TO BECAUSE IN EACH ONE OF THOSE

3   CASES, THE COURT SAID THAT THE RULE 68 OFFER OF JUDGMENT

4   DIDN'T OFFER FULL RELIEF.  THERE'S VARIOUS ISSUES WITH THEM,

5   YOU KNOW, PARTICULARLY WITH SCOTT.  THE RULE 68 ONLY ALLOWED

6   ATTORNEYS' FEES TO DATE AS FAR AS THE DATE THAT THE OFFER WAS

7   MADE.

8       SO SINCE THERE WASN'T FULL RELIEF IN ALL THREE OF THOSE

9   CASES FOR VARIOUS REASONS, THE JUDGE IN EACH PARTICULAR CASE

10  SAID THAT THEY'RE INSUFFICIENT OFFERS OF JUDGMENTS AND

11  REJECTED THOSE AS FAR AS MOOTING THE INDIVIDUAL CLAIMS.

12      AND WITH SWITCHING OVER TO THE -- THE CLASS --

13          **THE COURT:**  BUT THE OFFER IN THIS CASE WAS NOT

14  INSUFFICIENT, WAS IT?

15          **MR. LOKER:**  WELL, IT'S INSUFFICIENT IN THE SENSE THAT

16  IT DOESN'T ADDRESS MS. -- OR SORRY -- MR. PACLEB'S CLASS

17  CLAIMS.  UNDER RULE 23, HE HAS A RIGHT TO PROCEED AS A CLASS

18  ACTION IF HE SATISFIES THE REQUIREMENTS OF THE RULE 23.  SO

19  THE RULE 23 -- OR SORRY, THE RULE 68 OFFER IN THIS CASE,

20  SPECIFICALLY ONLY ADDRESSES THE INDIVIDUAL CLAIMS OF

21  MR. PACLEB.

22      SO THAT'S -- FOR THAT REASON, WE THINK IT'S INSUFFICIENT

23  AS WELL.  AND IT HAS THE SAME ISSUE AS SCOTT DID, WHERE IT

24  OFFERED "REASONABLE ATTORNEYS' FEES TO DATE."  YOU KNOW, IT'S

25  THE MINOR ISSUE AS FAR AS WE'RE CONCERNED.  WE'RE MORE THAN

1    CONCERNED ABOUT MR. PACLEB BEING OPERABLE TO PROCEED UNDER

2    RULE 23 AS FAR AS A CLASS ACTION GOES.

3         IF ALLSTATE'S THEORY STANDS, THEN WE'LL HAVE, YOU KNOW,

4    POTENTIALLY HUNDREDS OF THOUSANDS OF CASES ALLEGING THE SAME

5    VIOLATION AGAINST ALLSTATE ALL ACROSS THE COUNTRY AS OPPOSED

6    TO A SINGLE CLASS ACTION, YOU KNOW, PENDING IN THIS COURT THAT

7    WOULD ADDRESS EVERYTHING IN A MORE ECONOMICAL SENSE.

8         **THE COURT:**  NO, IT'S NOT LIKELY THAT MR. PACLEB WILL

9    RECEIVE EVEN AS MUCH AS THE OFFER EVEN IF HE IS SUCCESSFUL AS

10   A LEAD PLAINTIFF, IS IT?

11        **MR. LOKER:**  AND THE CONSEQUENCES FOR MR. PACLEB, IF

12   THAT OCCURS, ARE UNDER RULE 68.  WE DON'T BELIEVE IT'S UP TO

13   THIS COURT, OR ANY COURT FOR THAT MATTER, TO FORCE A PARTY TO

14   ACCEPT A REJECTED OFFER.

15        YOU KNOW, HE -- WE HAD SPOKE ABOUT THE OFFER WITH

16   MR. PACLEB AND THE CONSEQUENCES AND UP TO THE DATE OF FILING

17   OUR OPPOSITION, AND HE'S MOST INTERESTED IN PURSING THIS CASE

18   ON A CLASS ACTION BASIS, YOU KNOW, FOR PERSONAL REASONS.  HE'S

19   VERY FRUSTRATED BY THE CALLS THAT HE WAS RECEIVING.  SO

20   FORCING HIM TO ACCEPT AN OFFER THAT HE DOESN'T WANT TO ACCEPT,

21   WE BELIEVE, IS INAPPROPRIATE.

22        **THE COURT:**  BUT HE RECOGNIZES THAT HE'S NOT LIKELY TO

23   RECEIVE, EVEN IF SUCCESSFUL, AS MUCH AS HE WAS OFFERED BY THE

24   DEFENDANT?

25        **MR. LOKER:**  HE RECOGNIZES ON AN INDIVIDUAL BASIS THAT

1   THERE'S A POSSIBILITY THAT HE COULD NOT FARE AS WELL AS WHAT

2   ALLSTATE IS OFFERING TO HIM AND WHAT THOSE CONSEQUENCES ARE.

3        LET'S SEE.  AND AS FAR AS, YOU KNOW, THE PITTS CASE IS

4   CONCERNED, THE REASON WE THINK THAT PITTS IS DIRECTLY

5   APPLICABLE TO THIS SITUATION IS BECAUSE THE ENTIRE -- THE

6   EXACT ISSUE PRESENTED BEFORE PITTS IS WHETHER AN UNACCEPTED

7   OFFER MADE PRIOR TO MOTION OF CLASS CERTIFICATION BEING FILED

8   MOOTS THE INDIVIDUAL CLASS REP -- CLASS REPRESENTATIVE'S

9   CLAIMS.

10       YOU KNOW, LIKE I SAID, IN GENESIS, THEY JUST ASSUMED FOR

11  THAT PURPOSE -- FOR THE PURPOSE OF THAT RULING, THAT SUCH AN

12  OFFER WOULD MOOT A CLAIM.  PITTS ACTUALLY WENT THROUGH AND

13  EXAMINED THE DIFFERENT OPINIONS, YOU KNOW, SOSNA AND GARRITY

14  AND PUGH, AND IT DIDN'T RELY ON THOSE OPINIONS BUT IT USED

15  THOSE OPINIONS AS THE FOUNDATION FOR WHAT PITTS ULTIMATELY

16  RULED ON THE APPLICABLE ISSUE HERE, AND THAT'S THAT WHEN A

17  MOTION FOR CLASS CERTIFICATION HAS NOT BEEN FILED YET A RULE

18  68 HAS BEEN MADE, THAT RULE 68 DOES NOT MOOT THAT CLASS

19  REPRESENTATIVE'S CLAIMS.

20       AND MR. LEVINE -- OR SORRY -- LEVIN ALSO TOUCHED ON THE

21  RULE 23(E), AND WE -- YOU KNOW, I'M STRUGGLING TO SEE THE

22  RELEVANCE AS FAR AS RULE 23 IS CONCERNED.  LIKE MR. LEVIN

23  STATED, THE REASON RULE 23 WAS AMENDED WAS BECAUSE THERE WAS A

24  SPLIT BETWEEN THE DISTRICTS AS TO WHETHER, A, INDIVIDUAL

25  SETTLING IN A CLASS ACTION REQUIRES NOTICE TO THE PUTATIVE

1    CLASS MEMBERS.

2         AND RULE 23(E) WAS EVENTUALLY AMENDED BECAUSE, YOU KNOW,

3    IF -- SAY, THERE'S ONLY A SINGLE PHONE CALL HERE AND THEY --

4    WE SETTLE IT INDIVIDUALLY FOR $500 AND "X" AMOUNT OF DOLLARS

5    FOR ATTORNEYS' FEES, TO REQUIRE THE PLAINTIFF OR PLAINTIFF'S

6    COUNSEL TO INCUR MILLIONS OF DOLLARS IN NOTICE COSTS WOULD

7    JUST -- IT WOULD, YOU KNOW, HAMPER THE INDIVIDUAL SETTLEMENTS

8    AS FAR AS THESE CLASS ACTIONS GO.

9         AND AS FAR AS THE 12(B)(6) GOES, YOUR HONOR, IF I MAY, THE

10   TWO -- THE TWO CASE RELIED ON BY ALLSTATE, LEYSE AND CELLCO,

11   YOU KNOW, SIMPLY DON'T APPLY TO THIS ACTION.

12        LEYSE INVOLVED A LAND LINE VIOLATION OF THE TCPA, AND THE

13   REASON THE PLAINTIFF WAS ULTIMATELY RULED AGAINST IN LEYSE IS

14   BECAUSE LEYSE'S ROOMMATE WAS THE PERSON ULTIMATELY ANSWERED

15   THE PHONE CALL.  ONE OF THE ROOMMATES HAD CONSENTED TO THE

16   CALL, AS THE OTHER ROOMMATE HAD NOT CONSENTED TO THE CALLS.

17        SO IN THE CONTEXT OF THE LAND LINE VIOLATIONS OF THE TCPA,

18   IT WOULD CREATE AN IMPOSSIBLE BURDEN ON THE BUSINESS OR

19   WHOEVER'S MAKING THE CALLS TO IDENTIFY WHO CONSENTED AND WHO

20   HADN'T CONSENTED.  SO THAT'S -- FOR THAT REASON, BECAUSE, YOU

21   KNOW, IT RELIES ON THE LAND LINE SECTION OF THE TCPA, I DON'T

22   THINK IT APPLIES HERE WHERE IT'S STRICTLY FOCUSED ON THE CELL

23   PHONE SECTION OF THE TCPA.

24        AND ALSO REGARD TO CELLCO DOING BUSINESS AS VERIZON,

25   CELLCO TRIED TO SUE ON BEHALF OF THE VERIZON, YOU KNOW,

1  MEMBERS FOR CALLS THAT THEY RECEIVED FROM DEFENDANT IN THAT

2  CASE, YET CELLCO HADN'T RECEIVED ANY CALLS THEMSELVES.  IT WAS

3  THE MEMBERS OF VERIZON THAT RECEIVED THE CALLS ON THEIR OWN

4  CELL PHONES.

5      AND AS FAR AS THE HYPOTHETICAL GOES, I THINK IT GOES

6  AGAINST THE CASE OF GONZALES VS. ARROW FINANCIAL.  AND

7  APOLOGIZE I DON'T HAVE A CITE.  IT'S IN THE NINTH CIRCUIT, BUT

8  IN GONZALES, THE COURT EXAMINED A HUSBAND AND WIFE

9  RELATIONSHIP.  THE HUSBAND WAS THE OWNER OF THE ACCOUNT, BUT

10  THE WIFE WAS THE OWNER OF PHONE.  THE WIFE MADE ALL THE PHONES

11  (SIC).  SHE ALWAYS USED THE PHONE.  SHE -- YOU KNOW, THE

12  HUSBAND NEVER HAD ANY USE OF IT, THE CELLULAR PHONE; YET WHEN

13  THE HUSBAND SIGNED UP WITH ARROW FINANCIAL, HE HAD CONSENTED

14  HIMSELF TO RECEIVING CALLS.

15      BUT THE WIFE WAS A PARTY THAT RECEIVED THE CALL.  SO WHEN

16  ARROW FINANCIAL WAS TRYING TO CONTACT THE HUSBAND, THEY DIALED

17  IN THE WIFE'S CELL PHONE NUMBER AND SHE BECAME, ACCORDING TO

18  GONZALES, THE INTENDED RECIPIENT OF THE CALL BECAUSE THEY

19  TYPED IN HER NUMBER SPECIFICALLY.  THEY -- EVEN THOUGH THE

20  HUSBAND HAD CONSENTED TO IT, HE HAD NO CONTROL OVER HER CELL

21  PHONE NUMBER.

22      WITH REGARD TO WHETHER THE TCPA IS A STRICT LIABILITY

23  STATUTE, THE NINTH CIRCUIT HAS STATED IN SATTERFIELD THAT IT

24  IS A STRICT LIABILITY STATUTE.  I DON'T HAVE THE PINPOINT SITE

25  IN FRONT OF ME, BUT I JUST WANTED TO PUT THAT ON THE RECORD.

1        AND THAT'S ALL I HAVE, YOUR HONOR.

2            **THE COURT:**  ALL RIGHT.

3            **MR. LEVIN:**  A FEW POINTS, YOUR HONOR.

4            **THE COURT:**  BRIEF RESPONSE, PLEASE.

5            **MR. LEVIN:**  BRIEFLY.

6        MY OPPONENT SAID THAT GENESIS IS DIFFERENT BECAUSE IN THAT

7    CASE, MOOTNESS WAS DETERMINED BASED ON THE PLAINTIFF WAIVING

8    THAT DURING THE -- THAT ISSUE DURING THE COURSE OF THE APPEAL.

9    AND THE THIRD CIRCUIT HAD HELD THAT -- AND THE DISTRICT COURT

10   HAD HELD THAT UNDER THIRD CIRCUIT LAW, THE -- AN OFFER OF

11   JUDGMENT THAT MORE THAN SATISFIES THE PLAINTIFF'S CLAIMS DOES

12   MOOT THE INDIVIDUAL PLAINTIFF'S CLAIMS.

13       FIRST OF ALL, IN THIS CASE, I THINK MY OPPONENT HAS NOW

14   STATED ON THE RECORD WHAT SEEMED QUITE CLEAR FROM THE BRIEFS,

15   WHICH IS THAT ALLSTATE'S OFFER OF JUDGMENT UNDER RULE 68 DID

16   OFFER HIM MORE THAN HE CAN RECOVER IF HE PREVAILED IN COURT.

17       HE'S NOT POINTING TO ANYTHING THAT ISN'T IN ALLSTATE'S

18   OFFER.  AND, IN FACT, WE'VE SHOWN IN OUR BRIEFS THAT

19   ALLSTATE'S OFFER, WHEN YOU COMPUTE IT ALL, IS MORE THAN HE

20   COULD HOPE TO RECOVER IN COURT.

21       AND UNDER NINTH CIRCUIT LAW -- AND THAT'S WHY AT PAGE 4 OF

22   OUR REPLY BRIEF, WE CITED TWO NINTH CIRCUIT CASES AS WELL AS

23   SEVERAL CALIFORNIA FEDERAL DISTRICT COURT CASES, FOR THE

24   PROPOSITION THAT A RULE 68 OFFER THAT MORE THAN SATISFIES THE

25   PLAINTIFF'S CLAIMS DOES MOOT THE INDIVIDUAL PLAINTIFF'S

1   CLAIMS.

2      THE NINTH CIRCUIT SAID IN THE MARSCHALL CASE, 2010

3   DECISION, THE DISTRICT COURT PROPERLY DISMISSED MARSCHALL'S

4   INDIVIDUAL CLAIMS AGAINST RECOVERY SOLUTIONS.  THE

5   DEFENDANT -- FOR LACK OF SUBJECT MATTER JURISDICTION, BECAUSE

6   THE DEFENDANTS' OFFER OF JUDGMENT WAS FOR MORE THAN MARSCHALL

7   WAS LEGALLY ENTITLED TO RECOVER.

8      AND PEOPLE AREN'T -- COURTS AREN'T FORCING PLAINTIFFS TO

9   TAKE THESE OFFERS.  THE COURTS ARE DETERMINING THAT THEY

10   CANNOT PROCEED WITHOUT SUBJECT MATTER JURISDICTION AND IF THE

11   DEFENDANT HAS OFFERED TO LET JUDGMENT BE TAKEN, AND IT'S AN

12   AMOUNT THAT MORE THAN SATISFIES THE CLAIMS, THAT -- THEY ENTER

13   THE JUDGMENT.

14      THE -- ONCE YOU HAVE AN INDIVIDUAL CLAIM THAT HAS BECOME

15   MOOT, THE SUPREME COURT HELD IN GENESIS IN NO UNCERTAIN

16   TERMS -- THEY SAID IT TWO WAYS.  THEY SAID FIRST, THE MERE

17   PRESENCE OF COLLECTIVE ACTION ALLEGATIONS IN THE COMPLAINT

18   CANNOT SAVE THE SUIT FROM MOOTNESS ONCE THE INDIVIDUAL CLAIM

19   IS SATISFIED.

20      AND THEY SAID A SECOND TIME, ONCE PLAINTIFF RECEIVED THE

21   RULE 68 OFFER, SHE HAD NO PERSONAL INTEREST IN REPRESENTING

22   PUTATIVE UNNAMED CLAIMANTS, NOR ANY OTHER CONTINUING INTEREST

23   THAT WOULD PRESERVE HER INSTITUTE FROM MOOTNESS.

24      I THINK THE WHOLE POINT OF GENESIS HEALTHCARE IS THAT EVEN

25   THOUGH THE PLAINTIFF MAY WANT TO REPRESENT A CLASS, IF THE

1  NAMED PLAINTIFF NO LONGER HAS A CLAIM BECAUSE HE'S BEEN

2  OFFERED MORE THAN HE CAN RECOVER IN COURT, THAT INTEREST

3  DISAPPEARS.

4       THE COURT IS SAYING, THERE'S -- THERE'S -- DON'T WASTE THE

5  COURT'S TIME FOR THE NEXT SEVERAL YEARS DOING A CLASS ACTION

6  WHEN THE NAMED PLAINTIFF HAS NO STAKE IN THIS CONTROVERSY.

7       AND, AGAIN, GENESIS IS THE LAW OF THE LAND, I BELIEVE, ON

8  THAT ISSUE.  AND THE COURT ALSO RECENTLY, THIS TERM, DECIDED

9  IN THE -- THE COMCAST CASE AND A LITTLE BIT EARLIER IN THE

10  WAL-MART CASE IN 2011 THAT A CLASS ACTION IS AN EXCEPTION TO

11  THE USUAL RULE THAT LITIGATION IS CONDUCTED BY AND ON BEHALF

12  OF THE INDIVIDUAL NAMED PARTIES ONLY.

13       IN ORDER TO JUSTIFY A DEPARTURE FROM THAT RULE, A CLASS

14  REPRESENTATIVE MUST BE PART OF THE CLASS AND POSSESS THE SAME

15  INTEREST AND SUFFER THE SAME INJURY AS THE CLASS MEMBERS.  SO.

16       THAT'S WAL-MART VS. DUKES, 131 SUPREME COURT 2541.  AND

17  COMCAST VS. BARON --

18           THE COURT:  YOU DON'T NEED TO PROVIDE THE CITES.

19           MR. LEVIN:  SURE.

20       WELL, IN ANY EVENT, YOUR HONOR, HERE PACLEB HAS BEEN

21  OFFERED MORE THAN HE CAN RECOVER IN COURT.  HE NO LONGER

22  POSSESSES THE SAME INTEREST OR SUFFERS THE SAME INJURY AS ANY

23  OF THE PUTATIVE CLASS MEMBERS HE SEEKS TO REPRESENT.

24       THANK YOU.

25           THE COURT:  ALL RIGHT.  MATTER SUBMITTED.

1    **MR. LOKER:**  THANK YOU, YOUR HONOR.

2    **MR. LEVIN:**  THANK YOU, YOUR HONOR.

3    **THE COURT:**  WE'RE ADJOURNED.

4       (PROCEEDINGS WERE CONCLUDED AT 10:19 A.M.)

5

6                    --O0O--

7

8              **CERTIFICATE OF REPORTER**

9

10       I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

11   FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

12   I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

13   NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

14   HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

15   OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

16

17   _____

18        RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

19              SUNDAY, NOVEMBER 10, 2013

20

21

22

23

24

25